IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------  :
UNITED STATES OF AMERICA             : CASE NO.  4: 04 CR 508
                                                              :
                                         Plaintiff   :
                                                              : MEMORANDUM OF OPINION AND
            -vs-                                    : ORDER DENYING DEFENDANT'S
                                                              : MOTION FOR A NEW TRIAL
                                                              :
MICHAEL J. BUDD                           :
                                                              :
                                      Defendant  :
---------------------------------------------------  :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 8 October 2004, defendant Michael J. Budd was charged in a four-count indictment. (Docket #1). The trial in this case began on 14 February 2005 and was submitted to the jury on 22 February 2005. On 1 March 2005, the jury returned a partial verdict, finding the defendant guilty of conspiracy (count one). Because the jury was dead-locked on the other counts, even after receiving two *Allen* charges, the Court declared a mistrial on counts two, three, and four. The second trial in this case – on counts two, three, and four – began on 6 April 2005 and was submitted to the jury on 13 April 2005.[1] On 14 April 2005, the jury returned a guilty verdict on all three counts.

---

[1] To prevent possible prejudice to Mr. Budd and jury confusion during the second trial, the jury was presented with a redacted indictment which eliminated any reference to the conspiracy count and which renumbered counts two, three, and four as counts one, two, and three.

Currently before this Court is defendant's motion for a new trial on the conspiracy charge (count one) based on newly discovered evidence.[2] (Docket #147). The government filed a brief in opposition and the defendant submitted a reply. (Docket #153 and #154). For the reasons set forth below, defendant's motion will be denied.

## I.  BACKGROUND

**A.    Indictment, Verdict Form, and Jury Verdict**

Count one of the indictment charged Mr. Budd with conspiring with others to violate the federal civil rights laws, as set forth 18 U.S.C. § 242, and to obstruct justice, as provided in 18 U.S.C. § 1512(b)(3). Specifically, count one alleged that defendant Michael J. Budd, together with persons known and unknown to the grand jury, did:

> knowingly and willfully conspire, combine, confederate and agree with each other to:
>
> a) deprive Tawhon Easterly of rights and privileges secured and protected by the Constitution and laws of the United States, to wit: the right to Due Process of law under the Constitution, which includes the right to be free from excessive force amounting to punishment by one acting under color of law, in violation of Title 18, United States Code, Section 242, and
>
> b) corruptly persuade and engage in misleading conduct toward another person with intent thereby to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense, in violation of Title 18, United States Code, Section 1512(b)(3).
>
> * * *
>
> All in violation of Title 18, United States Code, Section 371.

---

[2] This Court previously denied defendant's combined post-trial motion for a new trial, judgment of acquittal, and arrest of judgment with respect to count one. (Docket #102).

2

(Docket #1, at 3-4 and 6).[3]

Consistent with the jury instructions on count one, the verdict form, submitted to the jury, was drafted to ensure jury unanimity. Specifically, it required the jury to answer separately the question of Budd's innocence or guilt on the conspiracy charge with respect to both deprivation of an inmate's civil rights and obstruction of justice:

> As to Count One of the Indictment – that is, conspiracy to commit a criminal act– we, the jury, find that:
>
> > MICHAEL J. BUDD, as to conspiring to deprive Tawhon Easterly of his Fourteenth Amendment right under the United States Constitution to be free from excessive force amounting to punishment, under color of law, is
> >
> > GUILTY _____        NOT GUILTY _____
> >
> > MICHAEL J. BUDD, as to conspiring to obstruct justice, is
> >
> > GUILTY _____        NOT GUILTY _____

---

[3] In counts two, three, and four, Officer Budd is charged with depriving and with aiding and abetting others to deprive three individuals of their civil rights in violation of Title 18, United States Code, Section 242. Specifically, these counts allege that defendant Michael J. Budd, along with others:

> [W]hile acting under color of the laws of the State of Ohio, and while aiding and abetting each other, did use and cause to be used excessive force on [Tawhon Easterly, Brandon Moore, and Stephen Blazo], [detainees at the Mahoning County Jail and/or Courthouse], resulting in bodily injury, thereby willfully depriving [them] of rights and privileges secured and protected by the Constitution and laws of the United States, to wit: the right to Due Process of law under the Constitution, which includes the right to be free from excessive force amounting to punishment by one acting under color of law.
>
> All in violation of Title 18, United States Code, Sections 242 and 2.

(Docket #1, at 6-8).

3

On 22 February 2005, the case was submitted to the jury. On 24 February 2005, the jury sent word that it could not come to a unanimous verdict on several of the charges. After reading the jury an *Allen* charge and giving a partial verdict instruction, this Court sent the jury back to deliberate further. The following morning, 25 February 2005, the jury sent out another communication, now stating that it had reached an impasse on all counts. The Court gave the jury a second *Allen* charge, over the defendant's objection, and the jury returned to its deliberations. That afternoon the jury submitted a new question, asking: "Your Honor, can we declare a verdict on one part of Count 1 and still not reach a verdict on the other part?" (Budd Trial Tr. 2/25/05 25 at 9). After a brief discussion with counsel outside the presence of the jury, both sides agreed with the Court's decision to answer the jury's question with a simple "yes." (Budd Trial Tr. 2/25/05 25 at 11-12).

After adjourning for the weekend, the jury resumed its deliberations on Monday, 28 February 2005. On 1 March 2005, the jury sent another note to the Court, indicating that they had reached a verdict on one count but were unable to declare a unanimous verdict on the other three counts. Although the jury could not reach a unanimous conclusion regarding whether Officer Budd conspired to deprive a person of his civil rights, the jury unanimously found that Officer Budd was guilty of conspiracy to obstruct justice. The Court adjudged defendant guilty of count one, conspiracy in violation of 18 U.S.C. § 371, and declared a mistrial on counts two, three, and four.[4]

---

[4] Mr. Budd was ultimately retried and convicted on counts two, three, and four.

4

**B.     Basis of Defendant's Motion**

As grounds for his motion for a new trial on count one, Mr. Budd relies on written reports and testimony of Raymond Hull and John Rivera, which he claims were not available to him prior to the first trial.

1.     <u>Raymond Hull and John Rivera</u>

Raymond Hull and John Rivera were deputies in the Mahoning County Sheriff's Department, who served under then-Major Michael Budd. Like Mr. Budd, Hull and Rivera faced federal criminal charges for the punitive beating of Tawhon Easterly, an inmate at the Mahoning County Jail. However, Hull and Rivera were indicted separately from Mr. Budd, and their trial was scheduled to immediately follow Mr. Budd's.[5] At the time of Mr. Budd's first trial, Hull and Rivera had pled not guilty to the charges against them. Although Budd's

---

[5] Hull and Rivera, along with four other co-defendants, were indicted in Case No. 4:04 CR 381.

attorneys subpoenaed both defendants, Budd's attorneys withdrew the subpoenas.[6] (Docket #60, order (non-document)).

After the conclusion of Mr. Budd's first trial, Hull and Rivera entered guilty pleas at change of plea hearings on 23 and 24 February 2005, respectively. During Budd's second trial on counts two, three, and four, Hull and Rivera testified during the government's case in chief pursuant to their plea agreements.[7]

### 2. Hull and Rivera's Supplemental Use of Force Reports

---

[6] During the first day of trial, the Court held a side-bar conference with the attorneys for both parties to discuss the defendant's issuance of subpoenas to Hull, Rivera, and other Mahoning County deputies who had been criminally charged:

> MR. YAVORCIK (attorney for Budd): We had initially subpoenaed all of the other deputies that are charged and after talking to all of their lawyers, they are just going to assert their Fifth Amendment privilege.
>
> THE COURT: I have one from –
>
> MR. YAVORCIK: So we are going to withdraw the subpoenas, Your Honor.
>
> THE COURT: Okay. That's up to you. However you want to handle it. Another way is we can give you time to let them actually assert [the privilege in court.]
>
> MR. YAVORCIK: No, I don't want to put that dance on in front of the jury because they are going to get up and they are going to say why did you call this guy.
>
> * * *
>
> THE COURT: Well . . . what I can do is either you're going to withdraw the subpoenas or if you don't want to withdraw the subpoenas, then we can bring them in without the jury present . . . and voir dire them on this on whether or not they really want to [assert the privilege].
>
> MR. YAVORCIK: No, I'll withdraw them.

(Budd Trial Tr., 2/14/05 at 40-41).

[7] Ultimately, Hull and Rivera were sentenced to 15 and 18 months in prison, respectively.

6

In September 2002, both Hull and Rivera completed, at Mr. Budd's request, supplemental use of force reports regarding the Tawhon Easterly incident. Hull's supplemental report provided in pertinent part:

> Sgt. Deluca told this deputy and others that Major Budd had called down about the incident and he said that he wanted to know why the inmate ["I/M"]that hit Deputy Kaychalo was not in the hospital. A short time later Sgt. Deluca told myself and Deputies Dixon, Kashak [sic] and Rivera to go and move I/M Easterly, Tawhon from P-Pod to O-Pod.
>
> * * *
>
> Upon entering O-Pod vestibule I/M Easterly started to pull away from Deputies stating to get your hands off me[.] [A]t this point a short struggle ensued in which I landed on top of I/M Easterly pinning him to the floor.
>
> * * *
>
> When I Deputy Hull returned to booking I asked Sgt. Deluca what reports needed written [sic] due to the scuffle. He stated "none, we don't need them this order came from Budd."

(Budd Trial, Def. Ex. A). Rivera, in his statement, similarly stated:

> Sgt. Deluca called myself and other deputies [Hull, Kaschak, and Dixon] and said that Major Budd called him and asked why wasn't Easterly in the hospital yet. A short time later we were called and instructed to transport Easterly to the discipline pod-o the adjoining pod to pod-p. As Inmate Easterly was escorted inmate became verbally and physically irate [and] began yelling and pulling away in the pod-o hallway. Inmate was then taken down and contained and was escorted by two arm escort position and taken to his cell.

(Budd Trial, Def. Ex. B).

Prior to the commencement of the first trial, the government provided defendant and his counsel with early discovery of witness statements and summaries of such statements,

7

covered by the Jencks Act.[8] Included in the government's production to the defense was a sealed envelope containing Hull and Rivera's supplemental reports. Because Hull and Rivera had not yet entered guilty pleas or waived their Garrity rights at the time the reports were provided to the defendant,[9] no member of the government's prosecution team had viewed the supplements or had any information concerning their content.

### 3. Hull and Rivera's Testimony at the Second Budd Trial

During the second Budd trial, testimony was elicited from both Hull and Rivera about their supplemental use of force reports. Both Hull and Rivera testified that, several months after the Tawhon Easterly incident, then-Major Budd called them into his office and ordered them to write reports about what happened. (Budd Trial Tr. 4/6/05 at 164-65; and 4/7/05 at 119-20). Both also testified that Budd did not tell them what to write in the report. (Budd Trial Tr. 4/6/05 at 165; and 4/7/05 at 120). Hull and Rivera admitted, however, that their reports were not truthful. (Budd Trial Tr. 4/6/05 at 165-66; and 4/7/05 at 121-22). Specifically, both reports indicated that the deputies use of force was appropriate, when, in fact, that was not true. (Budd Trial Tr. 4/6/05 at 136-41, 165-66, and 170; and 4/7/05 at 110, 114-15, and 122).

---

[8] The Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defense "with any material statement made by a witness to the government that is signed or otherwise verified by the declarant." United States v. Davis, 306 F.3d 398, 421 (6th Cir. 2002). However, the government need not produce Jencks Act material until the witness "has testified on direct examination in the trial of the case." 18 U.S.C. 3500(a); see also United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988). While the government has the option to produce such material earlier than provided by the Jencks Act, it may not be compelled to do so. United States v. Algie, 667 F.2d 569, 572 (6th Cir. 1980). In this case, the government opted for the early disclosure of Jencks Act materials.

[9] The protections afforded by the Fifth Amendment prohibit the "use of public employees' compelled incriminating statements in a later prosecution for the conduct under investigation." McKinley v. City of Mansfield, 404 F.3d 418, 427 (6th Cir. 2005) (citing Garrity v. New Jersey, 385 U.S. 493, 500 (1967)).

8

## II. MOTION FOR A NEW TRIAL STANDARD

Pursuant to Fed. R. Crim. P. 33, this Court may, upon the defendant's motion, "vacate any judgment and grant a new trial if the interests of justice so require." Fed. R. Crim. P. 33(a); See United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994). If a motion for a new trial is not filed within seven days of the verdict or within such further time as the court may fix during the seven-day period, a district court lacks jurisdiction to consider the merits of the motion unless it is based on "newly discovered evidence." Fed. R. Crim. P. 33; United States v. Koehler, 24 F.3d 867, 869 (6th Cir. 1994). In order to merit a new trial on the basis of newly discovered evidence, Budd must establish each of the following four elements:

(1) Evidence was discovered after the trial;

(2) It could not have been discovered earlier with due diligence;

(3) The new evidence is material and not merely cumulative or impeaching; and,

(4) The evidence would likely produce an acquittal if the case were retried.

United States v. Jones, 399 F.3d 640, (6th Cir. 2005); United States v. Dupree, 323 F.3d 480, 488 (6th Cir. 2003). In applying this four-part test, courts should exercise their discretion cautiously as motions for a new trial based on newly discovered evidence are disfavored. Dupree, 323 F.3d at 488; United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994).

## III. ANALYSIS

9

As will be demonstrated below, Mr. Budd's motion for a new trial is flawed because the evidence he relies on is neither newly discovered nor likely to produce an acquittal if the case were to be retried.

**A.    Evidence Is Not Newly Discovered**

Budd does not contest the fact that he had Hull and Rivera's supplemental reports prior to the first trial or that he knew what Hull and Rivera could provide through live testimony related to these reports.  Nevertheless, he contends that this evidence was "newly discovered" because Hull and Rivera were unavailable to testify at Budd's first trial due to their assertion of their Fifth Amendment rights and "there was no way to present their supplemental reports to the jury."  (Docket #154, at 3).

Taking the supplemental reports first, Budd contends that the evidence is newly discovered because it was "not available to the defense during the first trial."  (Docket #147, at 5).  Budd's argument regarding the unavailability of reports is not entirely clear.  It is evident, however, that his argument is not based on lack of access to the documents as he does not challenge the government's assertion that the reports were provided to him in advance of the first trial.  Although Budd never attempted to introduce Hull and Rivera's reports during the first trial, he appears to suggest that he would have been precluded from doing so because of <u>Garrity</u>.  Such a suggestion is misguided as <u>Garrity</u> presents no obstacles in this case.[10]

---

[10] Guessing at Budd's reasoning, the government also addresses whether the reports would have constituted inadmissible hearsay and whether they could have been used for a non-hearsay purpose. Because Budd does not advance such arguments in either of his briefs, this Court does not address those issues.

10

Although Garrity would clearly bar the government's use of Hull and Rivera's supplemental reports in criminal prosecutions against them, it does not operate to prevent Budd from introducing these reports in his defense. The reason for that distinction is that Garrity's concerns about self-incrimination are not present when the statements are being used by someone other than the declarant as a defense to prosecution.[11] Cf. In re Grand Jury Subpoena, 75 F.3d 446, 448 (6th Cir. 1996) (explaining that "the protection of the Fifth Amendment privilege, when applied to statements by police officers in internal affairs files, must focus on the *use* of those statements against the officers who gave them.") If Budd had introduced Hull and Rivera's statements in his defense, the government would still have been precluded from using them in their prosecution of Hull and Rivera. Given Budd's access to the reports, his decision not to introduce them, and his failure to identify a basis upon which the reports would have been excluded, Budd has failed to demonstrate that the reports were unavailable for use at the trial, let alone newly discovered. See United States v. Hawkins, 969 F.2d 169, 175 (6th Cir. 1992) (holding that if a defendant knew about the evidence at the time of trial, he cannot satisfy the newly discovered evidence requirement of Rule 33); United States v. Seago, 930 F.2d 482, 489 (6th Cir. 1991).

Setting aside the content of the supplemental reports, the only testimony by Hull and Rivera that is potentially relevant to Budd's conviction of conspiracy to obstruct justice was that Budd ordered them to write the supplemental reports and that Budd did not tell them

---

[11] This Court expresses no opinion about whether the government could itself introduce such compelled statements when prosecuting someone other than the declarant, as that issue is not before the Court.

11

what to write in those reports. Although he does not dispute that he was aware that Hull and Rivera could testify to these things, he contends that such evidence was "newly discovered" given that they were unavailable to testify in light of the assertion of their Fifth Amendment rights. Such an argument is unavailing. In a strikingly similar case, the Sixth Circuit held that, where a defendant is aware of a witness's testimony prior to trial, such testimony is not newly discovered merely because the witness, who at the time of trial asserted his Fifth Amendment privilege, no longer intends to assert that privilege. Glover, 21 F.3d at 138-39.[12] In reaching its conclusion, the Sixth Circuit explained that such evidence, though "newly available," was not "newly discovered" within the meaning of Rule 33. Id. at 138. "The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." United States v. Turns, 198 F.3d 584, 587 (6th Cir. 2000). In this case, as Hull and Rivera's testimony related to Budd's interactions with them, it is evident that Budd was well aware of their potential testimony prior to trial.[13] As such, Hull and Rivera's testimony, though newly available in light of their guilty plea after Budd's first trial, was not newly discovered.[14]

---

[12] Defendant tries to distinguish Glover by referring to facts which lent support to Sixth Circuit's further conclusion that even if the testimony was newly discovered it was not likely to produce an acquittal if the case was retried. 21 F.3d at 139. Such an argument is unpersuasive as it conflates two separate elements the defendant must prove; namely, that the evidence is both newly discovered and is likely to produce an acquittal. In Glover, the Sixth Circuit found both elements lacking, and both conclusions independently supported the denial of a motion for a new trial.

[13] During the first trial, Mr. Budd testified that he ordered Hull and Rivera to write supplemental use of force reports. (Budd Trial Tr. 2/17/05 at 85 and 134-35).

[14] Defendant argues that United States v. Garland, 991 F.2d 328 (6th Cir. 1993) supports his request for a new trial. In Garland, the Sixth Circuit vacated a conviction and ordered a new trial in light of, among other things, the likely testimony of a witness who could not be located prior to trial. 991 F.2d at

12

**B.     Evidence Is Not Likely to Result in an Acquittal**

Even if Hull and Rivera's supplemental reports and testimony could be considered newly discovered evidence, Budd would still not be entitled to a new trial unless he could demonstrate that the evidence is likely to produce an acquittal if the case were retried. Kaschak's supplemental use of force report largely mirrors Hull and Rivera's reports as all three suggest that the force used on inmate Easterly was reasonable.  Budd points to only one difference in the reports – that Hull and Rivera's reports provided that Budd called and asked why Easterly was not in the hospital while Kaschak's report stated more generically that "they called from upstairs and asked why this inmate was not in the hospital."  (Budd Trial, Gov't Ex. 20).  Based on that single difference, Budd suggests that Hull and Rivera's supplemental reports would have resulted in his acquittal because, in mentioning Budd by name, the reports "clearly rebuts the Governments [sic] assertion that Mike Budd sought to have his deputies to [sic] redact his name from the report."  (Docket #147, at 6).

Budd's contention that the "newly discovered evidence" is likely to produce an acquittal on the charge of conspiracy to obstruct justice is fundamentally premised on his misguided theory that his conviction rested solely on the purported fact "that Mike Budd ordered his name redacted from Kaschak's report." (Docket #154, at 6).  In an attempt to bolster this specific theory of his conviction, Budd inappropriately relies on a post-verdict interview with the jurors in his first case.  Specifically, Budd states:

---

335-36.  Even if Garland could properly be read to suggest that testimony by a witness who could not be located prior to trial is newly discovered, it does not control the outcome in this case where a witness was unavailable because he elected to assert his Fifth Amendment privilege.  Any support Garland could lend to the defendant's argument by analogy is precluded by Glover, a controlling decision by an earlier panel which is directly on point.

13

> However, the interview with jurors after the first trial suggests that the sole conviction in the first trial rested entirely on the testimony that Mike Budd [sic] name was removed from Kaschaks [sic] report.

(Docket #154, at 1). As Budd's trial counsel should well know, such a use of a jury interview is wholly improper and is an abuse of "the long-recognized and very substantial concerns [which] support the protection of jury deliberations from intrusive inquiry." Tanner v. United States, 483 U.S. 107, 127 (1987). With the narrow exception of "extraneous influence[s]" alleged to have affected the jury, "the near-universal and firmly established" rule is that juror testimony to impeach a jury verdict is "flatly prohibited." Id. at 117. In offering their own characterization of the jurors' purported reasoning, Budd's lawyers have gone even a step beyond what has been consistently and firmly prohibited.

Setting aside his inappropriate references to the alleged reasoning of the jury, Budd misconstrues the breadth and nature of the obstruction of justice evidence marshaled against him. In a nutshell, the government's theory was that Budd ordered the unlawful punitive beating of Tawhon Easterly and then, once allegations of that incident came to light in a letter from the Austintown Township Police Department,[15] engaged in a conspiracy to obstruct any investigation into those allegations. The government argued that Budd, in furtherance of this conspiracy, coerced and intimidated Deputy Kaschak into

---

[15] At some point after Sheriff Wellington of the Mahoning County Sheriff's Department turned the Austintown letter over to Major Budd, the letter disappeared and was never turned over to the FBI. However, Interim Chief of the Austintown Police Mark Durkin testified that the letter included allegations, based on statements made by Ronald Kaschak during an interview, that Major Budd gave a direct order to put an inmate in the hospital and that Mr. Kaschak, among others, subsequently assaulted that inmate. (Docket #107, at 6 and 8).

14

writing a false supplemental report to cover up the unlawful beating and turned this false report over to federal authorities investigating the incident.

In presenting its case regarding the conspiracy to obstruct justice, the government extracted testimony and presented arguments which demonstrated fundamental inconsistencies between the allegations contained in the Austintown letter that Budd ordered, and the deputies carried out, an unlawful beating and Kaschak's supplemental report which does not specifically mention Budd and provides that the use of force was justified. At trial, Mr. Kaschak testified as to why he lied about the Easterly incident in his supplemental report:[16]

> Q: How did it come about that you wrote an incident report about the Tawhon Easterly beating eight to nine months after it occurred?
>
> A: Major Budd called me into his office, called Sergeant Montero and told me to report to his office.
>
> * * *
>
> Q: What was your understanding of why you were being called down to Major Budd's office?
>
> A: I went for an interview with the Austintown police and admitted the incident, and they told me they were going to write the sheriff a letter about the incident.
>
> * * *
>
> Q: When you arrived at Major Budd's office, what was his tone and demeanor?
>
> A: He was irate, he was pissed.
>
> Q: What was he doing?

---

[16] Federal prosecutor Kristy Parker from the United States Department of Justice is asking the questions, and Ronald Kaschak is supplying the answers.

15

> A: He was waving a letter.
>
> Q: And what kinds of things was he saying to you at this point?
>
> A: He said at that point, he goes, "I got to get this from the Austintown police? What the fuck am I supposed to do now? This is public record."
>
> Q: Did he tell you to do anything?
>
> A: He told me to write a supplement on the incident.
>
> * * *
>
> Q: What did you do when Major Budd ordered you to write this supplement?
>
> * * *
>
> A: I walked over to the conference room and I was going to write [the supplement]. When I was walking over, he said, "After you are done writing it, I'm going to fucking arrest you for assault."

(Docket #69, at 34-37). At that point, Mr. Kaschak testified that he refused to write the report without a union representative present. (Docket #69, at 37). Mr. Budd responded by telling Kaschak that he was being placed on administrative leave for refusing to write a supplemental report, gave Kaschak a letter indicating that he was under an Internal Affairs investigation, and took his gun and badge. (Docket #69, at 37-38). Eventually, Mr. Kaschak testified that he relented and wrote a false report indicating that the use of force was appropriate and leaving out Budd's name. (Docket #69, at 39-40). According to Kaschak, once Budd read the supplemental report, he "did a 360," started being nice, and gave Kaschak back his gun and badge. (Docket #69, at 41). Kaschak testified that the

16

next day Budd told him not to worry about the incident and that it was "over and done with." (Docket #69, at 41).

Notwithstanding Budd's arguments to the contrary, nothing contained in Hull and Rivera's supplemental reports or their testimony rebuts the evidence regarding the Austintown letter or the circumstances surrounding the authoring of a false supplemental report by Kaschak and its production to the FBI.[17] If, as suggested by Budd, the only evidence of obstruction in this case involved an alleged order to Kaschak to redact Budd's name from the supplemental use of force report, Hull and Rivera's supplemental reports might have had some impact. However, because the evidence relating to Budd's conviction of conspiracy to obstruct justice did not include such an alleged order but rather was significantly more complex, his argument lacks force. The fact that Budd turned two supplemental reports over to the FBI which suggested that Tawhon Easterly was not mistreated does not undercut the evidence, presented by the government, that Budd coerced Kaschak into changing his story, that Budd provided Kaschak's false report to the FBI rather than the Austintown letter, which was the only written document suggesting that Mr. Easterly had been mistreated. In short, Budd has presented nothing to this Court which is likely to produce an acquittal if count one were retried.

---

[17] As noted by the government, Hull and Rivera's testimony largely corroborates the government's contention that Budd was guilty of conspiracy to deprive Tawhon Easterly of his civil rights (the other conspiratorial object in count one) and was guilty of actually depriving Mr. Easterly of those rights, either as an aider and abetter or under a Pinkerton theory of liability (count two). In other words, rather than increasing the likelihood of an acquittal on count one, Hull and Rivera's testimony and reports may have increased the likelihood of Budd's conviction on both counts one (albeit on a different object of the conspiracy) and two.

## IV. CONCLUSION

Because Hull and Rivera's testimony and supplemental reports do not constitute newly discovered evidence and because such evidence, even if considered newly discovered, is not likely to lead to an acquittal for Budd in a retrial of the conspiracy charge (count one), his motion for a new trial lacks merit and is denied.

IT IS SO ORDERED.

       /s/ Lesley Wells
   UNITED STATES DISTRICT JUDGE

Dated: 9 June 2005